IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEFF HAVRISKO,            )
                          )
       Plaintiff,      )
                          )      Civil Action No. 22-189
    vs.               )
                          )
KILOLO KIJAKAZI,      )
*Acting Commissioner of Social Security*,[1]  )
                          )
       Defendant.

ORDER

AND NOW, this 25th day of January 2023, the Court has considered the parties' motions for summary judgment and will award summary judgment in Defendant's favor except with respect to her request for costs which was unargued in her accompanying brief. *See Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996) (explaining that a "conclusory assertion" will not adequately present an issue for a court's consideration). The agency's final decision wherein the Administrative Law Judge ("ALJ")[2] denied Plaintiff's applications for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") pursuant to Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence; therefore, it will be affirmed. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).[3]

---

[1]     The Clerk is directed to amend the docket to reflect that Kilolo Kijakazi is the Acting Commissioner of Social Security.

[2]     The ALJ's decision is the final agency decision in this matter because the Appeals Council "found no reason under [its] rules to review the [ALJ's] decision" and "denied [Plaintiff's] request for review." (R. 1). Accordingly, the ALJ's decision is the final disability determination subject to the Court's review. 20 C.F.R. §§ 404.981, 416.1481.

[3]     Plaintiff has challenged the underlying decision as being unsupported by substantial evidence for at least four reasons. The Court finds that these arguments are largely reducible to a

request to reweigh the evidence.  Accordingly, and as explained herein, the Court will not disturb the underlying decision.

The Court reviews the ALJ's findings of fact for substantial evidence and has plenary review with respect to questions of law.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  When substantial evidence supports an ALJ's findings, a reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" merely because the evidence could have been found to support a different outcome.  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *Zappala v. Barnhart*, 192 Fed. Appx. 174, 177 (3d Cir. 2006) ("[T]he possibility that two inconsistent conclusions may be drawn from the evidence contained in the administrative record does not prevent an agency's finding from being supported by substantial evidence.").  This standard of review is deferential; however, it "is not . . . a talismanic or self-executing formula for adjudication."  *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  Despite the deference afforded agency determinations of disability, reviewing courts "retain a responsibility to scrutinize the entire record and to reverse or remand if the . . . decision is not supported by substantial evidence."  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

ALJs evaluate alleged disability in five steps.  20 C.F.R. §§ 404.1520(a)(4)(i)—(v), 416.920(a)(4)(i)—(v).  Pursuant thereto, an ALJ asks "whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work."  *Roberts v. Astrue*, No. 02:08-CV-0625, 2009 WL 3183084, at *2 (W.D. Pa. Sept. 30, 2009).  Before resolving the inquiries presented at steps four and five, an ALJ must formulate a claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(a)(4)(iv)—(v), 416.920(a)(4)(iv)—(v).  A claimant's RFC is a finding, "based on all the relevant evidence," of "the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

In this matter the ALJ resolved the first and second-step inquiries in Plaintiff's favor and found Plaintiff had two severe, medically determinable impairments: epilepsy and status-post vagus nerve stimulator implant.  (R. 14).  He further found that Plaintiff's medically determinable mental impairments—"Adjustment Disorder with Depressed Mood, Major Depressive Disorder, and post-traumatic stress disorder ('PTSD')"—were not severe.  (R. 15).  At step three the ALJ found that Plaintiff had no presumptively disabling impairments, so he went on to formulate Plaintiff's RFC.  (R. 16—17).  Based on Plaintiff's alleged symptoms/limitations, the objective medical evidence, and medical opinion/prior administrative medical findings evidence, the ALJ found Plaintiff could sustain a limited range of light work with added restrictions such as limitation to "simple and routine tasks and simple work[-]related decisions," "off-task 10% of the time," and the accommodation of "an unscheduled absence 1 day a month."  (R. 17).  Using the RFC, the ALJ found that Plaintiff could return to past work as

a Sales Attendant.  (R. 21).  Alternatively, the ALJ found Plaintiff's age, education, work experience, and RFC would permit adjustment to "other work that exist[ed] in significant numbers in the national economy."  (R. 22).  Accordingly, the ALJ found Plaintiff to be not disabled.  (R. 22—23).

The first argument that Plaintiff has raised to challenge the non-disability determination is that the ALJ erred insofar as he discussed evidence of Plaintiff's possible noncompliance with his medication regimen without addressing the possibility that Plaintiff's mental impairments were the cause of, or a contributing factor to, such noncompliance.  Plaintiff's argument in this regard is highly speculative but, having construed it generously, the Court still detects no error in the ALJ's consideration of evidence showing instances of noncompliance.  ALJs have been faulted for drawing a negative inference from a claimant's noncompliance with a treatment regimen without considering that the noncompliance could have been due to the claimant's impairment(s).  *Voorhees v. Colvin*, 215 F. Supp. 3d 358, 381 (M.D. Pa. 2015); *Lassiter v. Comm'r of Soc. Sec.*, No. 14-6127, 2015 WL 9462908, at *15 (D.N.J. Dec. 23, 2015) ("[I]t is improper to draw adverse inferences from a claimant's failure to comply with treatment without addressing Plaintiff's reason for noncompliance with her treatment.").  But, in this case, there is no indication the ALJ drew an adverse inference from instances in Plaintiff's record where it appeared he was noncompliant with his medication regimen; rather, the ALJ merely acknowledged noncompliance evidence in his review of the objective medical evidence.  (R. 19).  Where the ALJ drew no adverse inference from evidence of noncompliance, the Court finds no error that would require remand for further administrative consideration.

Plaintiff has relatedly argued that the ALJ failed to account for his mental impairments in his formulation of the RFC.  Again, the court finds no such error in the ALJ's RFC finding.  Until the fifth step of the five-step disability evaluation, claimants bear the burden of proof.  *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security.").  Therefore, the claimant must establish those limitations which are appropriate for inclusion in his or her RFC.  In this matter the ALJ explained his consideration of Plaintiff's mental impairments initially at step two when he determined that Plaintiff's mental impairments were non-severe.  (R. 15).  In support of that finding, the ALJ explained that Plaintiff's mental impairments did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities."  (*Id.*).  Further explaining that finding, the ALJ reviewed Plaintiff's mental health treatment records and other evidence and found Plaintiff had no limitations in the four areas of mental functioning outlined in the disability regulations as the "paragraph B" criteria.  (*Id.*).  In his evaluation of the relevant evidence toward the RFC, the ALJ considered State agency psychological consultants' findings and a psychological consultative examiner's ("CE") opinions, wherein those sources indicated Plaintiff had no more than a moderate limitation in one area of mental functioning.  (R. 20).  Though the evidence of functional limitations arising from Plaintiff's mental impairments was negligible, the ALJ

limited Plaintiff to, *inter alia*, simple tasks and decisions with 10% off-task time and one monthly absence to accommodate his "fatigue and side effects from his medication." (R. 19).

Dissatisfied with those limitations, Plaintiff has argued that the ALJ's consideration of the mental impairments evidence should have led to an RFC finding that included more off-task time, limitations on interpersonal interactions, and avoidance of seizure triggers, among other things. (Doc. No. 10, pgs. 18—19). He has suggested that such limitations would have been appropriate in light of his fatigue syndrome, episodes of poor memory (especially post-seizure), and the combined effect of his epilepsy, depression, PTSD, and chronic fatigue. (*Id.*). The Court does not find these arguments to be compelling; rather, it is apparent that Plaintiff is asking for the Court to reweigh the evidence after the ALJ considered evidence of Plaintiff's mental impairments but found Plaintiff failed to prove further limitations were appropriate for inclusion in his RFC.

Plaintiff's next argument is that the ALJ's decision is undermined by his reliance on Plaintiff's daily activities for support of his findings, but the Court is unpersuaded of the error alleged. Courts have cautioned ALJs against finding "sporadic or transitory activity" disproves disability because disability does not mean a claimant must be nearly or totally incapacitated. *Smith*, 637 F.2d at 971—72 ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."). But, in cautioning ALJs thus, the courts have never undermined the evidentiary value of daily activities evidence which is identified in the regulations as being relevant to ALJs' evaluation of the limiting effect of a claimant's pain and other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002). In this matter the ALJ discussed Plaintiff's daily activities which included the ability to "watch television, shop in stores, play games, care for himself," "clean his apartment," "check his email," "play golf, sit with friends at local bars, and occasionally attend hockey games." (R. 19—20). The evidence upon which the ALJ relied in making these observations undermines Plaintiff's argument that the ALJ overemphasized sporadic activities. For instance, Plaintiff indicated in his May 2020 function report that his hobbies included "watching tv and playing golf" and that he went to the "golf course 5 days a week." (R. 378). Therefore, having reviewed the ALJ's decision and supporting evidence, the Court has found no misplaced reliance on Plaintiff's activities that would require remand.

Plaintiff has also argued that the ALJ's RFC determination is undermined by his evaluation of the medical opinion evidence. The ALJ found the State agency psychological consultants' findings to be "generally not persuasive" except insofar as they found Plaintiff "had no limitations in interacting, concentrating, and adapting." (R. 20). The ALJ found the psychological CE's opinions to be "persuasive." (*Id.*). And, finally, the ALJ found the State agency medical consultants' findings to be "generally persuasive." (*Id.*). For each of these persuasiveness determinations, the ALJ addressed supportability and consistency as required by the regulations applicable to Plaintiff's claims at 20 C.F.R. §§ 404.1520c and 416.920c. Excepting the State agency psychological consultants' finding that Plaintiff "had moderate limitations in the understanding B criterion," the sources' findings and opinions supported a

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 11) is GRANTED as specified above.

s/ Alan N. Bloch
United States District Judge

ecf:    Counsel of Record

---

light-work RFC without significant non-exertional limitations.  (R. 20—21).  Plaintiff has argued that the ALJ erred in his persuasiveness evaluations because the objective evidence of record shows he "suffers severe physical and mental limitations . . . resulting in severe impairment in his ability to interact with others, adapt and manage himself . . . concentrate, and understand and remember information."  (Doc. No. 10, pg. 21).  That is, Plaintiff has challenged the ALJ's evaluation of supportability and consistency with respect to the findings and opinions in evidence.  Plaintiff has further argued that the State agency consultants lacked the opportunity to examine him and that their review of his record was incomplete because additional records were subsequently added thereto.  (Doc. No. 10, pg. 22).

Plaintiff's arguments in this regard are, again, largely requests to reweigh the evidence. For instance, where Plaintiff has argued that the CE's findings of sleeplessness and depression were inconsistent with the CE's opinion that Plaintiff had no functional limitations (Doc. No. 10, pgs. 21—22), this is merely Plaintiff's alternative evaluation of that opinion evidence.  The ALJ adequately explained his own evaluation of the CE's opinions when he explained that the CE's opinions were supported by his examination findings of "intact memory and concentration, eye contact, and cooperation."  (R. 20).  With respect to Plaintiff's argument that the ALJ overvalued the State agency consultants' findings where they lacked access to subsequently generated evidence, this Court and others have repeatedly explained that State agency consultants' findings are valuable despite this inherent challenge.  *Fetters v. Kijakazi*, No. CV 21-1861, 2023 WL 131056, at *3 n.4 (W.D. Pa. Jan. 9, 2023) (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)) ("State agency reviewers' findings are inherently valuable even though it is widely acknowledged that there will be 'some time lapse between their report and the ALJ hearing and decision,' during which time additional evidence will be added to a claimant's record.").  And, finally, with respect to Plaintiff's argument that the State agency consultants did not examine him, the Court notes that a source's relationship with a claimant—including whether the source has examined him or her—is not a factor that ALJs are required to address in their explanations of persuasiveness determinations.  20 C.F.R. §§ 404.1520c(b)(2), (c)(3)(v).

For all these reasons, the Court will affirm the ALJ's decision by granting Defendant's summary judgment motion.  The Court need not address Plaintiff's final argument that the ALJ's decision is unsupported by substantial evidence and that additional limitations were appropriate for inclusion in the RFC because this is just a summation of the arguments the Court has already addressed herein.